Martin v. Hush.

---

No. 18,697.

O. H. MARTIN, *Appellee,* v. W. W. HUSH et al.,
*Appellants.*

SYLLABUS BY THE COURT.

SALE OF HOMESTEAD—*Deed Not Delivered—Specific Performance Refused.* The statute (Gen. Stat. 1909, § 3648) precluding the maintenance of an action for the specific performance of a contract to sell or exchange a homestead unless the contract of sale is signed by both husband and wife, or by an agent authorized in writing by both to make such sale or exchange, is not complied with by depositing a deed signed by husband and wife with a custodian, to await completion of a pending sale, but who is not authorized to deliver it.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed March 7, 1914. Reversed.

53—91 KAN.

*Dennis Madden,* and *Theodore Richardson,* both of Emporia, for the appellants.

*Dudley Doolittle,* and *Walter J. Gresham,* both of Cottonwood Falls, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a judgment against the defendants for specific performance of a contract for the exchange of land, signed by the plaintiff and defendant W. W. Hush. The defense now relied on is based upon the homestead right of the defendants. Fraudulent misrepresentations were also pleaded in the answer, but were eliminated by the findings.

The plaintiff owned a farm of 200 acres in Greenwood county, and defendant W. W. Hush owned a farm of 120 acres in Chase county, occupied as a homestead. Both farms were incumbered by mortgages. Oral negotiations for an exchange were opened between the owners, leading up to the contract. The material facts found by the court are that on January 25, 1912, the plaintiff and defendant W. W. Hush entered into a written agreement for an exchange of farms, in which Martin was given five days to accept or reject the contract. Hush examined the Martin land before signing the contract. On January 28 Martin examined the Hush land and advised Hush of the acceptance of the contract, in the presence of Mrs. Hush, who made inquiries regarding the neighborhood and schools in the vicinity of the Martin land. Hush then said that he and his wife would go to Cottonwood Falls the next day to consummate the exchange. On February 3 Martin deposited a warranty deed, made by himself and wife, conveying his farm to W. W. Hush, with John Bell, a person agreed upon "as the person with whom each of the parties were to deposit their papers pending the completion of the transaction, with the agreement that the papers of each should be left with

Bell until each party had furnished the other with abstracts of title showing good title covering their respective lands, and until each of the parties had had an opportunity to have such abstracts examined." On the same day Hush and wife signed and acknowledged their warranty deed, conveying their farm to the plaintiff, and a note and mortgage on the Martin land to secure the payment of $500 in favor of the plaintiff, and left these papers with Bell "as per agreement between the parties," and defendant Hush instructed Martin to pay the $500 to Bell for the use of the defendant. Martin returned to Greenwood county to perfect his abstract, with the understanding with Hush that he would return to Cottonwood Falls on the 6th of February, or as soon as possible, to consummate the exchange. On the 7th of February he returned with his abstract, and was informed by Bell that Hush had notified him not to deliver the papers. Martin then tendered the abstract to Hush, and said he was ready to pay the $500 and complete the exchange. Hush promised to close the deal. On the 6th of February Hush, through his attorney, sent a notice to Martin that he would not perform the agreement. This notice was received by Martin on February 9. The court further found:

"The defendant, Gertrude Hush, jointly with her husband, consented to the contract of exchange."

The court concluded that the plaintiff was entitled to specific performance and gave judgment accordingly, and also against defendant Bell for the possession of the deed.

The testimony bearing upon the deposit of the deeds will now be given. The plaintiff testified:

"That he went to see Hush's land in Chase county on or about January 28, 1912; that Hush asked him if he was going to trade, and that he said he was; that Mrs. Hush was present; that she did n't say anything, except to ask about the country and neighbors and schools; that Mr. Hush said that he would be in Cotton-

wood Falls the next day. I said, you and your wife put up your deed, and I will go home and get my abstract and deed and bring them right up here."

Mr. Bell testified:

"That he made out deed on February 3, 1912; that Mr. Martin left the deed with him. Martin said he would come back on the following Tuesday (February 6, 1912) to close up the deal. He then left immediately to catch a train.

"Hush's deed had been made before Martin left. The parties made arrangement to come back on the sixth. After Mr. and Mrs. Hush signed the papers Mr. Hush said that if Martin was not back on Tuesday to close up the deal he wanted his papers back; he had fooled away time enough.

"After Mr. Hush had bought the Chase county land he left the abstract with me. Mr. and Mrs. Hush had never authorized me to deliver the deed to Martin. Martin never authorized me to deliver his deed to Hush. He made no statement about it. Martin stated that the abstract was on the way. I did not receive any abstract out of the mail. Hush asked me to pass on the title when the abstract was presented. The abstract did not arrive by the sixth. Martin did not come on the sixth. Hush came to my office on that day and came back after dinner. In the evening he asked me for his deed back. I did not turn it over to him, as I wished to avoid trouble myself. Martin came to my office the next day. He brought the abstract to the Greenwood county land, and said, 'Here is the abstract.' I told him no use, as these people would not trade."

Mr. Hush testified that he examined the Martin land on January 25, and after relating matters bearing on the issue of misrepresentation, proceeded:

"While on the place he (Martin) said that Ed. Harrison had offered him thirty dollars an acre for the Greenwood county land, and that statement had effect on me. I was trading for the land to get out of debt; and I figured to sell a part of the land (Greenwood county land) to get out of debt. I intended to sell it to Ed. Harrison because Martin told me so; and I told my wife about it after I came home, and we figured that we could sell the part of the land and get out of debt

and get a smaller home. I never told her about signing up any contract until about the first of February, 1912.

"I told Martin on the twenty-ninth of January that I wanted time to investigate that property down there. I told my wife the conversation I had with him, and we wrote a letter to Harrison inquiring about his offer, and he wrote to me on the fourth of February, 1912, which we received on the sixth, that he did not want to buy any more land at present. . . . My wife saw this letter on the sixth of February. On February 3, 1912, we went to Bell's office and signed up the deed. Martin came in and said to Bell, 'there is my deed,' and left it lying there and said he would be back on the sixth to straighten or settle this up. . . . When my wife and I signed my deed I told Bell that if Martin did not come on the sixth I wanted that deed back. I made that statement when I turned my deed over to Bell. I left the deed with Bell because I wanted to investigate the Greenwood property to see whether it was worth what it was represented to me. Another reason why I left the papers with Bell is that I had no vault to keep them. I did not leave them there for Martin; I left them there for myself."

He then related the fact that after waiting for Martin all day on the 6th, he then gave notice through his attorney that the deal was off.

Mrs. Hush testified:

"That she had no knowledge of the writing signed by her husband, dated January 25, 1912, until two or three days before she signed the deed that was left at Bell's office. Mr. Hush told me after he had been down to Greenwood county that he had looked at the Greenwood county land and that it looked pretty good to him, and that Martin told him he could sell a part of it for thirty dollars an acre. . . . On February 3, 1912, I went to Mr. Bell's office and saw Mr. Martin there. There was nothing said at any time prior to me about signing the deed. . . . I would not have signed the deed had I known that Harrison had not offered to buy the land. I expected to hear from Harrison. We had written him to find out the truth of the matter of what we were told by Martin; that was my understanding of things on the day I signed the deed. I wrote the letter to Harrison myself. We received a letter from Harri-

son about the land about noon on the sixth of February, 1912. . . . I understood that we were to meet on the sixth of February, 1912, and talk the matter over. The matters to be talked over was the hearing of the truth about the representation of the land in regard to Mr. Harrison's offer."

Testimony of Mrs. Hush relating to a misdescription of the Martin land is omitted as she testified that it had nothing to do with her objections. She also testified:

"If he wanted the exchange to go through, that would have been satisfactory to you, would n't it? A. If everything else was all right.

"Q. If he had said it was satisfactory to him, it would have been to you. A. Well, yes.

"Q. You relied on his judgment in the matter? A. That part of it, yes.

"Q. You knew he was going down there for the purpose of examining the land for the purpose of exchange? A. Yes, sir.

"Q. When he came back, did you ask him for the contract? A. No, sir.

"Q. You did n't inquire at all? A. No, sir.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. What day did you come in and sign the deed? A. Monday.

"Q. At whose request? A. Mr. Hush's request.

"Q. Did you sign the note? A. Yes, sir.

"Q. Did you sign the mortgage? A. Yes, sir.

"Q. What did you understand the papers were for? A. Well, they were for—to pay the money, to make the change.

"Q. You did n't inquire into the details of it? A. No, sir.

"Q. You were satisfied to let your husband go ahead? A. Yes, in this case."

The contention of the defendants is that no enforceable contract for the conveyance of the homestead was made. A statute of this state, enacted in the year 1905, provides:

"That no action for the specific performance of a contract for the sale or exchange of real estate in the state

Martin v. Hush.

of Kansas, or for damages by reason of the violation of any contract to sell or exchange lands within the state of Kansas, occupied as a homestead by the owner and his family, shall be maintained, unless the contract of sale is signed by both the husband and wife, or by an agent or broker duly authorized, in writing, by both the husband and wife, to make such sale or exchange." (Laws 1905, ch. 154, § 1, Gen. Stat. 1909, § 3648.)

The contention of the plaintiff is that although Mrs. Hush did not sign the contract of January 25, by herself or any agent, as the statute provides, still "the contract and deeds, note and mortgage, constituted altogether a transaction of exchange." It is true that "any contract to sell," as the term is used in the statute, may be made by a deed without a precedent written agreement, or by an agreement alone if signed by husband and wife, or by an agreement and deed, but the deed or contract relied upon must be delivered as well as signed. The wife having knowledge of a contract made by her husband, which she has not signed, may in expectation of carrying it out sign and acknowledge a deed, but if she withhold the delivery it is of no effect, as a ratification of the contract or otherwise. It simply indicates a purpose such as she stated at the conclusion of her testimony "to let her husband go ahead," but she was at perfect liberty to change this purpose at any time before delivery of the instrument, with or without a good reason. She stated a reason, however. It was the intention of Mr. and Mrs. Hush to sell a part of the Martin land. Her husband had informed her that such a sale could be made to Harrison for $30 an acre. She immediately wrote for a verification of the information, and receiving an unfavorable answer, went no further with the deal. It is of no consequence whether Martin had told Hush that such a sale could be made. It was the information she had when she signed the deed and left it with Bell. She also had a right to limit the time of delivery to February 6, or any other time. It is not sufficient to say that relying upon her

husband's judgment she permitted him to act for her. He could not be made her agent to make the contract, otherwise than in writing, as the statute requires.

It is said that the deed was delivered in escrow. The evidence, however, is insufficient to prove an escrow. The custodian, as he testified explicitly, had no authority to deliver either deed, and there is no evidence to the contrary. No witness testified to any such authority. The finding of the court as to the agreement of deposit was that "each of the parties were to deposit their papers pending the completion of the transaction." This is as far as the evidence warranted, and in view of the testimony is understood to mean that for convenience, to avoid delay while the preliminaries should be settled, "pending completion of the transaction," the papers should be left with Bell for speedy exchange upon such completion.

As the contract of sale was not signed by both husband and wife, and the deed was not delivered nor its delivery authorized, the statute forbids specific performance. The joint consent found by the district court is insufficient to uphold the judgment, in the absence of a compliance with the statute.

The judgment of the district court is reversed with instructions to enter judgment for the defendants.